United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIGNAL MUTUAL INDEMNITY ASSOCIATION, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>DIGNITY HEALTH, et al.,<br><br>Defendants. | Case No. 15-cv-03818-HSG<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 38–39 |

Plaintiff Signal Mutual Indemnity Association, Ltd. ("Signal") filed its first amended complaint on August 15, 2016, Dkt. No. 37 ("FAC"), following the Court's order granting the motion to dismiss Signal's original complaint, Dkt. No. 36 (*Signal Mutual Indemnity Assoc., Ltd. v. Dignity Health*, No. 15-cv-03818-HSG, 2016 WL 3902492 (N.D. Cal. July 19, 2016)). The motions to dismiss filed by Defendants Clement Jones and David Cohen are now fully briefed and pending before the Court. Dkt. Nos. 38–39. Defendant Dignity Health dba St. Francis Memorial Hospital ("Dignity Health") has joined in the motions. Dkt. No. 40. For the reasons described below, the Court **GRANTS** the motions.[1]

**I.    BACKGROUND**

Signal alleges that the U.S. Department of Labor authorized it, as a group self-insurer, to secure and discharge a member's liabilities to its employees under the Longshore and Harbor Workers' Compensation Act ("LHWCA").[2] FAC ¶ 3. During the relevant time period, Total Terminals International, Inc. ("TTI") has been a member of Signal. *Id.* TTI employed Dwayne

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).
[2] *See generally* 33 U.S.C. § 901–950.

Washington as a sidepick operator at the Port of Oakland. *Id.* ¶ 9. On August 27, 2012, the sidepick that Mr. Washington was operating flipped forward, causing him serious injuries, including to his back. *Id.* ¶ 10.

Lamorte Burns & Co., Inc. ("LBCI") was one of Signal's claims adjusters. *Id.* ¶ 17. On January 30, 2014, LBCI wrote a letter to Dr. Jones at Dignity Health's St. Francis Memorial Hospital ("Hospital"), giving authorization to proceed with scheduling surgery on Mr. Washington and requesting that Dr. Jones provide notification regarding the surgery date and any pre-operative appointments and procedures. *Id.* ¶ 18. On March 12, 2014, LBCI wrote another letter to Dr. Jones. *Id* ¶ 19. The letter informed Dr. Jones that Mr. Washington had been cleared for surgery by another doctor, authorized Dr. Jones to proceed with scheduling the surgery, and requested notification regarding the surgery date. *Id.* ¶ 19. Signal alleges that each of the Defendants accepted consideration for the services they performed pursuant to LCBI's authorizations. *Id.* ¶ 20.

On May 23, 2014, Mr. Washington underwent disc-replacement surgery at the Hospital. *Id.* ¶ 25. Dr. Jones was the surgeon. *Id.* Dr. Cohen provided related pre-operative and post-operative care, as did other members of the Hospital's medical staff. *Id.* Following surgery, Mr. Washington developed thigh swelling, severe pain, and other medical conditions. *Id.* ¶ 26. He bled to death from a puncture to his left common iliac artery. *Id.*[3]

Signal alleges that, as a result of Mr. Washington's death, it became liable to pay death benefits under the LHWCA to his heirs, which Signal has paid and continues to pay. *Id.* ¶ 28. Signal alleges that it also became obligated to pay funeral and medical expenses related to Mr. Washington's death and may be liable for other payments under the LHWCA. *Id.* Signal claims that, but for Defendants' alleged negligence, it would not have been required to make such payments. *Id.* ¶ 29.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain

---

[3] The FAC does not specify the date on which Mr. Washington died.

2

statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). And even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation marks and citation omitted). The Court is not required to grant leave to amend where the plaintiff was advised of pleading deficiencies in a prior order of admission, yet failed to correct them upon amendment. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

### III. DISCUSSION

The FAC asserts four claims: (1) negligence, (2) breach of contract, (3) implied contractual indemnity, and (4) equitable indemnity. Each of these claims fails for the reasons articulated below.

3

### A. Negligence

Signal's negligence claim is barred for two reasons. First, Signal lacks standing to bring the claim. The claim is premised on the allegation that Defendants' negligent provision of medical care caused Mr. Washington's death. *See* FAC ¶¶ 31–36. Yet Signal is not one of the persons identified by the applicable statute as entitled to bring an action for wrongful death. *See* Cal. Civ. Proc. Code § 377.60. Moreover, Signal has specifically disavowed any intent to bring a subrogation claim. FAC ¶ 7 ("This is not a subrogation claim to which any local statue would apply nor is it derivative of Decedent's claim."); Dkt. No. 42 ("Opp.") at 2 ("[T]his is not a subrogation action.").[4]

Second, Signal's negligence claim is barred by the applicable statute of limitations, which is one year. *See* Cal. Civ. Proc. Code § 340.5.[5] Although the FAC fails to allege the date that Mr. Washington died, the original complaint pled that he died on May 26, 2014. *See* Dkt. No. 1 ¶¶ 12, 15. Thus, Signal filed this suit on August 20, 2015, almost three months after the statute of limitations had run. *See id.* A timely notice to sue letter may extend the statute of limitations by 90 days. *See* Cal. Civ. Proc. Code § 364. However, Signal once again fails to adequately plead that this provision applies. *See Signal*, 2016 WL 3902492, at *5 ("The single sentence in the complaint, that '[e]ach defendant was served with timely notice of Plaintiff's intent to sue' is inadequate." (quoting Dkt. No 1 ¶ 19)); FAC ¶ 30 (repeating identical language, along with the legal conclusion that this "extended the statute of limitations by 90 days"). Although Signal has

---

[4] *See also* Cal. Labor Code § 3852; *Garofalo v. Princess Cruises, Inc.*, 85 Cal. App. 4th 1060, 1069–70 (2000) (declaring that, where an employer or its insurer is obligated to pay a worker's compensation claim for an industrial injury, section 3852 codifies the principles of equitable subrogation, allowing the employer or its insurer to sue the third party tortfeasor responsible for the injury to recoup the amount paid to the employee); 33 U.S.C. § 933(b), (h) (providing that, subject to certain conditions, if an employer's worker's compensation insurer has provided benefits to an injured longshoreman, the insurer may assert a subrogation claim against a third party whose negligence or other fault has caused the longshoreman's injury).

[5] Section 340.5 states in part:
> In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first.

Cal. Civ. Proc. Code § 340.5.

submitted a declaration and exhibit purporting to show that section 364 applies, the Court does not consider these documents because they were not attached to the complaint or incorporated by reference, and do not constitute judicially noticeable facts. *See United States v. Ritchie*, 342 F.3d 903, 907–908 (9th Cir. 2003) (identifying these exceptions to the general rule that a district court may not consider materials outside the pleadings without converting a Rule 12(b)(6) motion into a Rule 56 motion); *see also Int'l Union of Operating Engineers, Local 3 v. Zurich N. Am.*, No. S-06-0957 WBS KJM, 2006 WL 2791156, at *2 (E.D. Cal. Sept. 27, 2006) (declining to consider declarations submitted in support of opposition to motion to dismiss).[6]

Thus, Signal's negligence claim fails on both standing and statute of limitations grounds. The Court's prior order put Signal on notice of these deficiencies. *See Signal*, 2016 WL 3902492, at *4–5. Given Signal's failure to cure them on amendment, the Court declines to grant leave to amend the negligence claim. *See Zucco*, 552 F.3d at 1007.

### B. Breach of Contract

Signal's breach of contract claim fails on two independent grounds. First, Signal's allegations could not plausibly demonstrate the existence of a contract between Signal and the Defendants regarding the medical care and treatment of Mr. Washington. Second, Signal's allegations could not plausibly show that such a contract included an "implied warranty of workmanlike performance" that Defendants breached.

Under California law, "[t]o recover for breach of warranty or contract in a medical malpractice case, there must be proof of an express contract by which the physician clearly promises a particular result and the patient consents to treatment in reliance on that promise." *McKinney v. Nash*, 120 Cal. App. 3d 428, 442 (1981). The facts alleged cannot plausibly show the existence of a promise by Defendants of a particular result or that Signal's authorization (or Mr. Washington's consent) was given in reliance on such a promise. It is not sufficient to plead

---

[6] The FAC's single reference to serving Defendants "with timely notice of Plaintiff's intent to sue" is insufficient to trigger the incorporation-by-reference doctrine. *See Ritchie*, 342 F.3d at 908 ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers *extensively* to the document or the document forms the basis of the plaintiff's claim." (emphasis added)).

5

that Dr. Jones sought and obtained authorization to perform a disc-replacement surgery from one of Signal's claims adjusters and that Defendants subsequently accepted consideration for the services performed. *See* FAC ¶¶ 17–20. First, prior authorization for non-emergency medical treatment is a commonly-used form of pre-service utilization review that seeks to contain healthcare costs by ensuring in advance that the proposed treatment is necessary. *See, e.g., State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.*, 44 Cal. 4th 230, 244–45 (2008) (finding that utilization review to assess employees' requests for medical treatment is required by California's workers' compensation program); *id.* at 542 (process intended to "control[] skyrocketing costs"); *Lauderdale Assocs. v. Dep't of Health Servs.*, 67 Cal. App. 4th 117, 119 (1998) (describing California's Medicaid utilization control program, which is required by federal law and includes prior review of medical treatment requests to ensure that they are medically necessary), *superseded by statute on other grounds as recognized in Life Care Centers of Am. v. CalOptima*, 133 Cal. App. 4th 1169 (2005). Thus, the allegations of the complaint do not plausibly show that the procedure followed here was anything other than a typical utilization review process to ensure that Mr. Washington's surgery was medically necessary. Second, as TTI's insurer, Signal was required to pay medical costs incurred to treat Mr. Washington's work-related injury. *See* 33 U.S.C. § 907(a)); *see also* FAC ¶ 12 (recognizing this requirement). Consequently, Signal's payment to Defendants does not plausibly demonstrate the existence of a contract, but instead tends to indicate that Signal was simply fulfilling its obligations as an insurer.

Even assuming *arguendo* that Signal's allegations regarding the existence of *any* contract were adequate, its claim would nevertheless fail because it has not plausibly alleged the existence of a *maritime* contract including an "implied warranty of workmanlike performance." *See id.* ¶¶ 20–22. "The implied warranty of workmanlike performance . . . applies only to contracts cognizable under federal admiralty law." *Rollin v. Kimberly Clark Tissue Co.*, 211 F.R.D. 670, 675 & n.6 (S.D. Ala. 2001); *see also Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156, 171–72 (1981) (observing that the stevedore normally warrants to discharge duties in workmanlike manner, as recognized in *Ryan Stevedor. Co. v. Pan-Atl. Steam. Corp.*, 350 U.S. 124, 131–32 (1956), *superseded by statute on other grounds as recognized in Edmonds v. Compagnie*

*Generale Transatlantique*, 443 U.S. 256 (1979)); *Smith & Kelly Co. v. S/S Concordia TADJ*, 718 F.2d 1022, 1025–27 (11th Cir. 1983) (describing history of implied warranty of workmanlike performance). This follows from the principle that "[w]hen a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation." *See Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 22–23 (2004).

To determine whether a contract is maritime in nature, the Ninth Circuit now applies the "primary objective" test from *Norfolk*. *See Sentry Select Ins. Co. v. Royal Ins. Co. of Am.*, 481 F.3d 1208, 1219 (9th Cir. 2007). Specifically, the Court must "examine[] the contract as a whole to determine whether its primary purpose [is] to protect or affect maritime commerce." *See id.* Here, the alleged contracts, which pertained to the provision of medical care at an onshore hospital, clearly did not have the primary purpose of protecting or affecting maritime commerce. Although Mr. Washington was a longshoreman, Defendants' failure to perform his medical procedure as allegedly warranted would have had the same negligible impact on maritime commerce whether he had been injured in an automobile accident on his way to the supermarket or while operating a side-pick at the Port of Oakland. *Cf.* Rollin, 211 F.R.D. at 677 ("A physician who treats off-duty seamen for injuries sustained previously while at sea does nothing different than when he or she treats a mechanic who accidentally crushes a thumb while working with a ball peen hammer.") This conclusion is unchanged by the fact that Signal was required by the LWHCA to pay the medical costs for Mr. Washington's procedure. *See Simon v. Intercontinental Transp. (ICT) B.V.*, 882 F.2d 1435, 1443 (9th Cir. 1989) ("Congress' use of its maritime power to create the rights and obligations of the LHWCA does not automatically confer admiralty jurisdiction on every claim that in any way relates to those rights and obligations.").

The Ninth Circuit's reasoning in *Simon* supports the Court's holding that the alleged contract could not plausibly have been a maritime contract. In *Simon*, the Ninth Circuit found that a stevedore company's contract for insurance against liability for injury to stevedores under the LHWCA was not a maritime contract:

> The insurance is only indirectly connected with maritime commerce because of the relationship between [the stevedoring company's] potential compensation liability and its performance of stevedoring

7

> contracts. Such a relationship is far too tenuous to justify classifying the insurance for compensation liability as a maritime obligation or interest sufficient to bring the policies and their related servicing agreements within the pale of admiralty jurisdiction.

*Id.* at 1443.[7] If a contract to provide insurance coverage for injuries to stevedores under the LHWCA is not a maritime contract, then alleged contracts between an insurer and private medical providers to treat an injured stevedore are not maritime contracts either: if anything, the relationship between the latter contracts and maritime commerce is even more "tenuous." *See id.*

Finally, the Court's holding is supported by out-of-Circuit decisions finding that a land-based physician's treatment of a patient injured at sea did not give rise to a maritime contract. *See Joiner v. Diamond M Drilling Co.*, 688 F.2d 256, 260 (5th Cir. 1982) ("A private land-locked physician who treats a patient who happens to have been injured at sea, does not thereby enter into an implied maritime contract."); *Rollin*, 211 F.R.D. at 675–77 (declining, on futility grounds, to grant leave to amend third-party complaint, given that any implied contract between ship owner and land-based physician to supply medical treatment to seaman injured aboard ship was insufficient to invoke federal admiralty jurisdiction). While Mr. Washington was a longshoreman injured at port, as opposed to a seaman injured at sea, the reasoning of these cases is still persuasive. If anything, the absence of a maritime contract is even clearer here.

Consequently, Signal's breach of contract claim fails. Moreover, the Court can envision no way that Signal could cure the pleading deficiencies through the truthful allegation of additional facts. Therefore, the Court denies leave to amend the breach of contract claim. *See Lopez*, 203 F.3d at 1130.

### C. Implied Contractual Indemnity

Signal's claim for implied contractual entity is premised on the existence of contracts between Signal and Defendants. *See* FAC ¶ 12 ("It was implied in the contracts between Plaintiff and Defendants, and each of them, that Defendants would indemnify Plaintiff . . . ."). However, Signal has failed, for the reasons articulated above, to allege facts plausibly showing the existence

---

[7] Although *Simon* predated *Norfolk*, and therefore did not apply the "primary objective" test, this portion of the opinion is still good law. *See Sentry*, 481 F.3d at 1220 (favorably quoting the same passage when reaching its holding under the "primary objective" test).

8

of any contract between Signal and Defendants. This is fatal to Signal's claim for implied equitable indemnity.

Furthermore, even assuming *arguendo* the existence of such contracts, the result would be no different. Implied contractual terms are disfavored, and Signal fails to allege facts plausibly showing satisfaction of the various requirements for finding an implied contractual provision. *See Grebow v. Mercury Ins. Co.*, 241 Cal. App. 4th 564, 578–79 (2015) ("A court may find an implied contract provision only if (1) the implication either arises from the contract's express language or is indispensable to effectuating the parties' intentions; (2) it appears that the implied term was so clearly within the parties' contemplation when they drafted the contract that they did not feel the need to express it; (3) legal necessity justifies the implication; (4) the implication would have been expressed if the need to do so had been called to the parties' attention; and (5) the contract does not already address completely the subject of the implication.").

Thus, Signal's claim for implied contractual indemnity fails on two independent grounds.[8] Furthermore, leave to amend this claim is not warranted. Signal's original complaint asserted a claim for "implied equitable indemnity and subrogation." Dkt. No. 1 ¶¶ 24–27. The Court's prior order described the deficiencies of that claim and ultimately concluded that "[t]he complaint does not properly notify the Defendants of the legal basis for an indemnity and/or subrogation claim." *See Signal*, 2016 WL 3902492, at *5–6. Given Signal's failure to cure its deficient indemnity allegations upon amendment, the Court declines to grant Signal leave to amend its implied contractual indemnity claim. *See Zucco*, 552 F.3d at 1007.

### D. Equitable Indemnity

Signal also fails to state a claim for equitable indemnity. FAC ¶¶ 48–54. "It is well-settled in California that equitable indemnity is only available among *tortfeasors* who are jointly and severally liable for the plaintiff's injury." *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Grp.*, 143 Cal. App. 4th 1036, 1040 (2006) (emphasis in original). The Court of Appeal has

---

[8] In opposition, Signal claims that "aside from indemnity arising out of implied contact law, Signal also seeks indemnity under a quasi-contractual theory." Opp. at 14. However, the Third Cause of Action, entitled "Implied Contractual Indemnity," makes no allegation whatsoever as to such a theory. FAC ¶¶ 44–47.

9

elaborated:

> With limited exception, there must be some basis for tort liability against the proposed indemnitor. Generally, it is based on a duty owed to the underlying plaintiff, although vicarious liability and strict liability also may sustain application of equitable indemnity. In addition, implied contractual indemnity between the indemnitor and the indemnitee can provide a basis for equitable indemnity.

*BFGC Architects Planners, Inc. v. Forcum/Mackey Constr., Inc.*, 119 Cal. App. 4th 848, 852 (2004) (internal citations omitted). Here, Signal has not alleged facts plausibly showing entitlement to equitable indemnity. The FAC contains no facts even suggesting that TTI, as Mr. Washington's employer, or Signal, as TTI's insurer, tortuously injured him. Signal does not allege vicarious or strict liability. And as articulated above, Signal's allegations regarding implied contractual indemnity are insufficient. Accordingly, the FAC provides no plausible basis to find that Signal and Defendants are tortfeasors who are jointly and severally liable for Mr. Washington's death. Therefore, Signal's claim for equitable indemnitee fails.

Furthermore, leave to amend this claim is not warranted. As described above, Signal was put on notice regarding the inadequacy of the indemnity allegations in its prior complaint. Given Signal's failure to cure its deficient indemnity allegations upon amendment, the Court declines to grant Signal leave to amend its equitable indemnity claim. *See Zucco*, 552 F.3d at 1007.

### E. *Burnside*

Signal argues that *Federal Marine Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404 (1969) "controls" the instant action. Opp. at 5. That case arose out of the death of a stevedore who died while conducting carpentry work on the 'tween deck of a ship. *Id.* at 407–08. The Court found that statutory subrogation under section 33 of the LHWCA, 33 U.S.C. § 933, was not the exclusive remedy available to the stevedore contractor seeking to recover from the shipowner compensation benefits payable to the deceased employee's beneficiary. *Id.* at 412–14.[9] The Court

---

[9] The Court also ruled that "federal maritime law does impose on the shipowner a duty to the stevedoring contractor of due care under the circumstances, and does recognize a direct action in tort against the shipowner to recover the amount of compensation payments occasioned by the latter's negligence." *Burnside*, 394 U.S. at 416–17. However, any such duty is irrelevant here because Signal has once again failed to allege any facts plausibly showing satisfaction of the requirements for extending admiralty jurisdiction over a tort. *See Signal*, 2016 WL 3902492, at *3–4 ("Given that the allegations in the complaint fail to establish how the tort claims—both the sidepick malfunction and Defendants' alleged negligence at the hospital—could satisfy the

10

expressly declined to find "that statutory subrogation is the employer's exclusive remedy against third party wrongdoers." *Id.* at 413–14. That principle survived the 1972 amendments to the LHWCA. *See Crescent Wharf & Warehouse Co. v. Barracuda Tanker Corp.*, 696 F.2d 703, 706–07 (9th Cir. 1983).

Nonetheless, *Burnside* does not create a standalone cause of action out of thin air. The Fifth Circuit has held that *Burnside* "make[s] it plain beyond any question that the cause of action so recognized is not created, expressly or impliedly, by the LHWCA and does not arise from or depend on any rights or obligations which the LHWCA imposes as between the employer and the offending third party." *See Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1182 (5th Cir. 1984). Therefore, if Signal seeks a remedy other than subrogation under section 933, it must adequately plead a cause of action outside the LHWCA as a basis for recovery. *See Louviere v. Shell Oil Co.*, 509 F.2d 278, 284 (5th Cir. 1975) ("We therefore hold that in the circumstances this case presents the employer who pays compensation without an award is not barred by Section 33 from pursuing *whatever nonstatutory rights he may have against third party wrongdoers*." (emphasis added)).

In light of the foregoing, *Burnside* clearly does not save the FAC. Signal specifically disavows asserting a subrogation claim under the LHWCA, but fails to adequately state any claim independent of the LHWCA. Therefore, dismissal is warranted notwithstanding *Burnside*.

//
//
//
//
//
//

---

locality test, maritime jurisdiction does not apply."); *Ali v. Rogers*, 780 F.3d 1229, 1235 (9th Cir. 2015) ("Tort claims may sound in admiralty jurisdiction if they satisfy a test with three components showing that the claim has the requisite maritime flavor. The relevant tort or harm must have (1) taken place on navigable water (or a vessel on navigable water having caused an injury on land), (2) a potentially disruptive impact on maritime commerce, and (3) a substantial relationship to traditional maritime activity." (internal citations and quotation marks omitted)).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss without leave to amend.[10] The Clerk is directed to enter judgment in favor of Defendants and close the case.

**IT IS SO ORDERED.**

Dated: 9/21/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[10] Relatedly, Docket No. 40 is **TERMINATED**.